IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

MEDFORD DIVISION

UNITED STATES OF AMERICA,

Plaintiff,

       v.

ERNEST LUTHER TAYLOR,

Defendant.

No. 1:15-cr-00173-AA

**ORDER**

---

**AIKEN, J.**

Defendant Ernest Luther Taylor is charged with using a minor to produce visual depictions of sexually explicit conduct, violating 18 U.S.C. § 2251(a). Defendant now moves to suppress photos and videos found during a search of his cell phone. I deny the motion to suppress.

## BACKGROUND

Medford Police Officer Jennifer Newell investigated Defendant on suspicion that he was

1 - ORDER

manufacturing and delivering psilocybin mushrooms. An anonymous informant told Newell that Defendant was growing psilocybin mushrooms in a storage shed in Central Point, Oregon. The informant said Defendant had previously grown psilocybin mushrooms in the house where Defendant lived in Medford. Newell observed Defendant traveling between the storage shed in Central Point and the house in Medford.

In October 2013, Newell drafted a search warrant and an affidavit describing her investigation of Defendant. A deputy district attorney for Jackson County reviewed the draft search warrant and affidavit, and suggested that Newell investigate Defendant further before seeking a judge's approval.

From October 2013 to February 2014, Newell continued investigating Defendant. In January 2014, another officer arranged a controlled buy of marijuana from Defendant at Defendant's house. The buyer purchased marijuana from Defendant, and said that Defendant had a grocery bag of loose marijuana in his house.

Newell learned that a fire marshal had attempted to inspect Defendant's storage shed. The fire marshal saw a wooden structure built by Defendant inside the shed that was completely shielded from view by sheets of black plastic. Defendant, who appeared to be very nervous, told the fire marshal that the wooden structure contained rooms used as "sex dungeons," and that the black plastic was for privacy. The fire marshal noticed several large freezers around the storage shed, which Defendant said were used for sex toys.

Newell revised the affidavit to incorporate the results of her additional investigation. In the revised affidavit, Newell stated her conclusion that Defendant was growing psilocybin mushrooms in the storage unit, transporting the psilocybin mushrooms to his house and

2 - ORDER

delivering them to customers. Newell stated that based on her experience and training, drug

dealers often keep records of their transactions with customers. Newell sought a warrant to

search for evidence of possession and manufacture of psilocybin mushrooms and marijuana.

Included among the items to be seizure were "Recipes," "Drug Records," and "Cell Phones."

The affidavit states,

> Conducting a search of digital devices such as phones, documenting the searches
> and making evidentiary and discovery copies can take over 5 business days.
> Complex systems or recovery tasks can require an excess of 45 business days.
> Due to the backlog of digital evidence pending examination and the limited
> number of trained forensic examiners, it is possible to take up to 12 months or
> more before the evidence will be fully processed.

Gov't Resp., Ex. 1, at 19-20, ECF No. 24-1.

In February 2014, Newell took the revised affidavit to a newly assigned deputy district

attorney, who concluded that the affidavit was sufficient to submit to a magistrate. On February

11, 2014, a Jackson County Circuit Court judge authorized the search warrant.

On February 18, 2014, officers executed the search warrant at Defendant's residence.

Among the items seized was a Samsung cell phone from Defendant's bedroom.

In August 2014, a Medford police detective, Brandon Bloomfield, examined the contents

of Defendant's cell phone. Bloomfield discovered eighteen images of a prepubescent girl (later

identified as the seven-year-old victim) partially undressed. Several images showed an adult

male touching the girl and pulling down her top. The phone also contained five videos of the girl

with her mouth on Defendant's penis.

Bloomfield obtained a warrant to search Defendant's residence for evidence of sexual

abuse and use of a child in a display of sexually explicit conduct. Bloomfield also obtained an

3 - ORDER

arrest warrant for Defendant. In August 2014, Defendant was arrested in Crescent City,

California, where he was traveling with the alleged victim and the alleged victim's mother.

## LEGAL STANDARDS

The Fourth Amendment provides that "no Warrants shall issue, but upon probable cause,

supported by Oath or affirmation, and particularly describing the place to be searched, and the

persons or things to be seized." U.S. Const. amend. IV. To comply with the Fourth

Amendment, a search warrant must describe the place to be searched and things to be seized with

particularity, and there must be probable cause to seize the things specified in the warrant. *See*

*United States v. SDI Future Health, Inc.,* 568 F.3d 684, 702-03 (9th Cir. 2009).

## DISCUSSION

Defendant contends that the search warrant did not show a sufficient connection between

the cell phone and the crimes of drug manufacturing and dealing. Defendant also contends that

the search of the contents of his cell phone was beyond the scope of the warrant.

In resolving Defendant's motion to suppress evidence from the search of his cell phone,

this court must strike a fair balance between the government's need to investigate criminal

conduct and the protection of individuals from unreasonable searches and seizures. *See United*

*States v. Schesso*, 730 F.3d 1040, 1042 (9th Cir. 2013) (citing *United States v. Comprehensive*

*Drug Testing, Inc. (CDT)*, 621 F.3d 1162, 1177 (en banc) (per curiam)). As the Supreme Court

has noted, "modern cell phones . . . are now such a pervasive and insistent part of daily life that

the proverbial visitor from Mars might conclude they were an important feature of human

anatomy." *Riley v. California*, ___ U.S. ___, 134 S. Ct. 2473, 2484 (2014). Because cell phones

have become so common, and so powerful, able to record, store, and potentially reveal every

4 - ORDER

aspect of a person's life, courts must now confront Fourth Amendment issues that would have
been difficult to imagine only ten years ago.

## I. The Good Faith Exception to the Exclusionary Rule

The exclusionary rule prohibits the government from using illegally seized evidence

against the victim of the unlawful search. *See United States v. Crews*, 502 F.3d 1130, 1135 (9th

Cir. 2007 (citing *Wong Sun v. United States*, 371 U.S. 471, 484 (1963)). There is a good faith

exception to the exclusionary rule, however, for searches "conducted in good faith reliance upon

an objectively reasonable search warrant." *Id.* at 1135-36 (citing *United States v. Leon*, 468 U.S.

897, 925 (1984)). This court may first determine whether the good faith exception applies before

addressing "whether the affidavit supported probable cause." *Id.* at 1136 (citing *Leon*, 468 U.S.

at 923-25). "[T]he government bears the burden of proving that officers relied on the search

warrant 'in an objectively reasonable manner.'" *SDI Future Health*, 568 F.3d at 706 (quoting

*Crews,* 502 F.3d at 1136).

Because I conclude that the good faith exception applies to the search and seizure here, I

need not address whether the search warrant lacked probable cause.

## II. The Good Faith Exception Applies to the Seizure of Defendant's Cell Phone

Defendant contends that the good faith exception does not apply here because Newell's

affidavit "is so lacking in indicia of probable cause that no reasonable officer could rely upon it

in good faith." *Crews* at 1136. As Defendant acknowledges, "the threshold for establishing this

exception is a high one" because "'[i]n the ordinary case, an officer cannot be expected to

question the magistrate's probable-cause determination.'" *Messerschmidt v. Millender*, ___ U.S.

___, 132 S. Ct. 1235, 1245 (2012) (quoting *Leon*, 468 U.S. at 921).

5 - ORDER

Defendant argues that Newell's affidavit "provided no information at all regarding drug dealing activities and a cell phone." Def.'s Mem. 5. But the Ninth Circuit does not require such specificity. *See SDI Future Health*, 568 F.3d at 706. The affidavit here does establish probable cause that Defendant was manufacturing and distributing psilocybin mushrooms and marijuana. A reasonable officer could conclude there was at least a "fair probability" that a cell phone belonging to Defendant would contain evidence of his drug manufacturing or transactions. Many, if not most, people who use cell phones with storage capabilities keep important information on them, so it is reasonable to believe that a drug dealer might have records of transactions on his cell phone. I conclude that no "'reasonably well trained officer would have known that the search was illegal in light of all the circumstances.'" *United States v. Camou*, 773 F.3d 932, 944 (9th Cir. 2014) (quoting *Herring v. United States,* 555 U.S. 135, 145 (2009) (internal quotation marks omitted)).

## III. The Good Faith Exception Also Applies to the Search of Defendant's Cell Phone

Defendant argues that even if the officers had probable cause to *seize* his cell phone, they should have obtained an additional search warrant to *search* the cell phone. But the search warrant targeted the contents of the cell phone, not just the phone itself. The search warrant contemplated a search of the cell phone, explaining the process for searching the contents of "digital devices such as phones." Gov't Resp., Ex. 1, at 24.

The problem with searching digital files, as opposed to paper files, is that "[t]here is no way to be sure exactly what an electronic file contains without somehow examining its contents -- either by opening and looking, using specialized forensic software, keyword searching or some other such technique." *CDT*, 621 F.3d at 1176. For this reason, "over-seizing is an inherent part

6 - ORDER

of the electronic search process ... and this will be far more common than in the days of paper

records." *Id.* at 1177. The Ninth Circuit has cautioned courts to use "greater vigilance" because

"[t]he process of segregating electronic data that is seizable from that which is not must not

become a vehicle for the government to gain access to data which it has no probable cause to

collect." *Id.*

Yet the Ninth Circuit has held that "the potential intermingling" of relevant evidence and

personal information "does not justify an exception or heightened procedural protections for

computers[1] beyond the Fourth Amendment's reasonableness requirement." *United States v.*

*Giberson*, 527 F.3d 882, 889 (9th Cir. 2008). Evidence of a crime such as drug dealing could be

located in emails, text messages, photos, videos, or social media accounts. A person seeking to

conceal incriminating evidence on a cell phone or computer has many options, such as hiding

images in text documents, or "'the simple expedient of changing the names and extensions of

files to disguise their content from the casual observer.'" *Id.* (quoting *United States v. Hill*, 459

F.3d 966, 978 (9th Cir. 2006) (further quotation marks omitted)). As the Ninth Circuit has

noted, "the nature of computers makes such searches so intrusive that the affidavits seeking

warrants for the search of computers often include a limited search protocol, and judges issuing

warrants may place conditions on the manner and extent of such searches, to protect privacy and

other important constitutional interests." *United States v. Payton*, 573 F.3d 859, 864 (9th Cir.

2009). But despite favoring search protocols, the Ninth Circuit has not seen fit to require them.

*See, e.g., United States v. Hill*, 459 F.3d 966, 977-78 (9th Cir. 2006) ("we look favorably upon

---

[1]A "smart" cell phone such as the one here is the equivalent of a computer for purposes of this analysis.

7 - ORDER

the inclusion of a search protocol; but its absence is not fatal"); *Schesso*, 730 F.3d at 1051 (rejecting argument that a warrant to search a computer and other digital devices was defective for failing to use adequate search protocols); *cf. CDT* at 1179-80 (proposing guidelines for limiting searches of digital storage devices) (Kozinski, C.J., concurring). Given the state of the law governing searches of digital devices, the officers here acted in good faith in executing the search of Defendant's cell phone, despite the lack of protocols to limit the scope of the search.

While searching Defendant's cell phone for evidence of drug dealing, the officer inadvertently encountered evidence of child abuse and child pornography. I agree with the government that the doctrine of plain view applies here. *See United States v. Wong*, 334 F.3d 831, 838 (9th Cir. 2003); *cf. CDT* at 1180 (proposing that magistrate judges "insist that the government waive reliance upon the plain view doctrine in digital evidence cases") (Kozinski, C.J., concurring). For the plain view doctrine to apply, "(1) the officer must be lawfully in the place where the seized item was in plain view; (2) the item's incriminating nature was 'immediately apparent'; and (3) the officer had a 'lawful right of access to the object itself.'" *Wong*, at 838 (quoting *Horton v. California*, 496 U.S. 128, 136-37 (1990) (citations omitted)).

Here, a reasonable officer could conclude that the plain view doctrine applied. The officer here did seek an additional search warrant after discovering the photos and videos of the child victim. Because the good faith exception applies to the search of Defendant's cell phone, the motion to suppress is denied.

///

///

///

8 - ORDER

## CONCLUSION

Defendant's motion to suppress (#20) is denied.

IT IS SO ORDERED.

DATED this _17th_ day of February, 2016.

ANN AIKEN
U.S. DISTRICT JUDGE

9 - ORDER